USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/22/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
       :
FIXED INCOME SHARES: SERIES M, et al.,    :
       :
                 Plaintiffs,    :     14-CV-9373 (JMF)
       :
             -v-    :     OPINION AND ORDER
       :
CITIBANK N.A., et al.,    :
       :
                 Defendants.    :
       :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This case is one of scores in this District and other courts around the country involving claims against the trustee of a statutory trust containing residential mortgage-backed securities. Plaintiffs, investors in securities issued by a Delaware statutory trust, allege that the indenture trustee for the trust, Defendant Citibank N.A. ("Citibank"), breached its duties under various contracts, the Trust Indenture Act, 15 U.S.C. §§ 77aaa *et seq.*, and the common law. In particular, Plaintiffs claim that they were harmed because Citibank failed to take certain actions when it discovered breaches of representations and warranties by the seller and servicer of the loans at issue and upon learning of "Events of Default." Each side now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. (Docket Nos. 135, 139). Plaintiffs also move, pursuant to Rule 23, for class certification. (Docket No. 109).

      As discussed below, the Court concludes that Plaintiffs' claims fail as a matter of law because they cannot prove that Citibank could have taken action to avoid the harms that ultimately befell them. That is because Citibank is not alleged to have learned about the purported breaches until 2009. Yet, before that date, the entities against whom Citibank might have pursued claims had declared bankruptcy and the deadline to assert claims within the

bankruptcy proceedings had passed. Against that backdrop, Plaintiffs fail to present any non-speculative reason to believe that Citibank could have and should have taken any different actions than it did, let alone that such actions would have prevented any harms to Plaintiffs. Accordingly, and for the reasons discussed below, Citibank's motion for summary judgment is granted and Plaintiffs' motions are denied as moot.

## BACKGROUND

The background of this action is summarized in greater detail in a prior opinion of this Court, familiarity with which is assumed. *See Fixed Income Shares: Series M v. Citibank N.A.*, 130 F. Supp. 3d 842 (S.D.N.Y. 2015). As a result of that Opinion (which granted in part and denied in part Citibank's motion to dismiss) and subsequent developments, two Plaintiffs remain: PIMCO and TIAA. *See id.* at 858 (dismissing certain causes of action and all claims relating to the New York common law (or "PSA") trusts). (Docket Nos. 115, 136 ("Defs.' Mem."), at 3). Further, their claims are limited to one Delaware statutory trust: the American Home Mortgage Investment Trust 2004-3 ("AHM 2004-3"). (*See* Defs.' Mem. 3). That trust was created when a "seller," American Home Mortgage Acceptance Inc. ("AHM Acceptance") bundled and sold mortgage loans to a "purchaser," Lehman ABS Corporation, which in turn exchanged the loans with the trust for notes. (Docket No. 144 ("Delange Decl."), Ex. 2 ("MLPA"); Docket No. 159 ("Resp. CSUF"), ¶¶ 14, 21). The notes then became investment instruments, issued under an Indenture that designated Citibank as the Indenture Trustee. (*See* Delange Decl., Ex. 1 ("Indenture"). Meanwhile, American Home Mortgage Servicing, Inc. ("AHM Servicing"), the "master servicer," was responsible for collecting and remitting payments as well as taking enforcement action against borrowers as necessary. (Indenture; *see also* Delange Decl. Ex. 3, at §§ 3.06, 3.13; *see* Resp. CSUF ¶¶ 2, 17, 21).

The AHM 2004-3 trust, like most residential mortgage-backed securities trusts, is governed by three main agreements: the Mortgage Loan Purchase Agreement or MLPA; the Indenture between Citibank and the issuer; and the Servicing Agreement (Delange Decl., Ex. 3 ("SA")), among Citibank, AHM Servicing, and the issuer.  These agreements grant investors certain powers and remedies, and define the duties of Citibank as trustee.  (*See* Indenture § 6.01(b)(i) ("Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture . . . .").  Significantly, Citibank's duties as trustee are more limited than the duties of an ordinary trustee at common law.  *See, e.g.*, *Elliot Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988) (noting that a securities trustee's duties "are strictly defined and limited to the terms of the indenture"); *Magten Asset Mgmt. Corp. v. Bank of N.Y.*, 15 Misc. 3d 1132(A), at *6 (N.Y. Sup. Ct. 2007) ("The role of an indenture trustee differs from that of an ordinary trustee . . . because its obligations are defined primarily by the indenture rather than by the common law of trusts. An ordinary trustee is subject to duties beyond those in the trust agreement . . . ." (citation omitted)).  Broadly speaking, two types of those duties are relevant here.  First, under the MLPA, the seller made various representations and warranties about the underwriting of each loan in the trust (for example, that the loans were originated in accordance with the lender's underwriting guidelines).  (MLPA § 3.2(v)).  The agreements provide that, "[u]pon the discovery . . . of a breach of any of the representations and warranties made in the [MLPA] in respect of any Mortgage Loan which materially and adversely affects the interests of the Noteholders," Citibank "shall give prompt written notice to the other parties" to the agreements.  (SA § 2.03).  Once a seller receives such notice, it is then required to cure the breach, substitute another loan in place of the defective loan, or repurchase "such Mortgage Loan" at its unpaid principal balance.  (*Id.*).

Second, the agreements provide that Citibank has certain responsibilities in the event that an "Event of Default" — defined to include "a default in the observance or performance of any covenant or agreement of the Issuer made in the Indenture," so long as certain conditions are met — occurs and becomes "known to" Citibank. (Indenture 88). Specifically, Citibank is required to notify all parties and the investors of the breach. (*Id.* § 6.05). Additionally, Citibank must "exercise the rights and powers vested in it . . . us[ing] the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs." (Indenture § 6.01(a)). (Federal law imposes a similar duty. *See* Trust Indenture Act, 15 U.S.C. § 77ooo(c) (requiring that an indenture trustee "exercise in case of default . . . such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs").) Notably, however, the Indenture Agreement states that "[t]he Indenture Trustee shall not be deemed to have notice or knowledge of any . . . Event of Default . . . unless a Responsible Officer of the Indenture Trustee" — defined as "any officer . . . with direct responsibility for the administration of the Indenture and also, with respect to a particular matter, any other officer to whom such matter is referred because of such officer's knowledge of and familiarity with the particular subject" (Indenture 109) — "has actual knowledge thereof or [has received] written notice of any such event . . . at its Corporate Trust Office." (*Id.* § 6.01(i)).

The residential mortgage-backed securities at issue in this case were issued in 2004. (*See* Defs.' Mem. 3). Three years later, on August 6, 2007, AHM Acceptance and AHM Servicing filed Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware. (Docket No. 138 ("Russell Decl."), Ex. 30 (*In re: Am. Home Mortg. Holdings, Inc.* ("*In re AHM*"), No.07-11047 (Bankr. D. Del.), Docket No. 1)). Thereafter, the Bankruptcy

Court established January 11, 2008, as the bar date for filing proofs of claim. (Russell Decl., Ex. 32-2 (*In re AHM*, Docket No. 1708), at ¶ 5)). Citibank filed proofs of claim "on a precautionary basis" against each debtor's estate prior to the bar date. (Russell Decl., Ex. 27, at 2). The Bankruptcy Court later approved a liquidation plan that established a formula for estimating and allowing claims for breaches of representations and warranties. (*See* Russell Decl., Ex. 32-3 (*In re AHM*, Docket No. 7029), at Art. 7(B)); *see also* Russell Decl., Exs. 32-4, 32-5 (*In re AHM*, Docket Nos. 7042, 7555)). Under that plan, the value of "[e]ach Breach of Warranty Claim" was "calculated based upon loan vintage (i.e., year and quarter of origination) and certain estimations and simplifying assumptions." (Russell Decl. Ex. 32-3, at Art. 7(B)). Loans originated in 2004, including all of the loans in the AHM 2004-3 trust, were assigned an assumed breach rate of 0.01%. (*Id.*). To the extent relevant here, the plan allowed damages per breach of such loans of 0.0% of the principal. (*Id.*). On March 5, 2010, the Bankruptcy Court so ordered a stipulation resolving Citibank's proofs of claim, awarding it zero dollars for any representation-and-warranty claims and $65,475 for servicing-related claims. (Russell Decl., Ex. 32-6 (*In re AHM*, Docket No. 8653)). Citibank notified the AHM 2004-3 noteholders of these developments, and informed them that Citibank did not intend to take any further action in the bankruptcy proceedings "unless otherwise instructed and directed." (Russell Decl., Ex. 26, at 3; *id.* Ex. 27). Citibank received no such instruction or direction.

Plaintiffs filed this suit on November 24, 2014, alleging that Citibank "failed to discharge its essential duties as trustee." (Docket No. 142 ("Pls..' Mem."), at 1). The remaining Plaintiffs' claims are based on two main sets of allegations. First, Plaintiffs argue that Citibank discovered breaches of representations and warranties that the seller of the underlying mortgage loans had made regarding the loans in the trust and that Citibank failed to act on those breaches as required under the governing agreements. In particular, Plaintiffs allege that Citibank failed to provide

5

notice of the breaches, ensure cures of the breaches, or force the seller to repurchase the breaching loans. (*Id.* 1-2, 11-22, 36-38). Second, Plaintiffs contend that Citibank had knowledge but failed to provide notice of servicer breaches, which matured into defaults under the governing agreements, in turn triggering a reimbursement provision. More specifically, Plaintiffs claim that Citibank failed to act prudently to protect their interests upon these Events of Default and failed to enforce the Trust's rights. (*Id.* 1-2, 24-38).

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought,"

6

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). When, as in this case, both sides move for summary judgment, the district court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011). Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted); *Flores v. United States*, — F.3d —, No. 16-3981, 2018 WL 1320585, at *2 (2d Cir. Mar. 15, 2018) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." (internal quotation marks omitted)). Affidavits submitted in support of, or opposition to, summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

Citibank raises several arguments in support of its motion for summary judgment, most of which turn on the meaning of the terms "discovery" and "actual knowledge" in the parties'

7

agreements.  (*See* Defs.' Mem. 18-21, 29-30).  The meaning of those terms is an issue that has bedeviled courts in this District and in the state courts and is crying out for definitive judicial resolution, presumably by the Second Circuit or the New York Court of Appeals.  *Compare, e.g.*, *Ret. Bd. of the Policemen's Annuity & Benefit Fund of City of Chicago v. The Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) (holding that knowledge "must be proved loan-by-loan and trust-by-trust"), *and Royal Park Invs. SA/NA v. HSBC Bank USA Nat'l Ass'n*¸ No. 15-CIV-10096 (LGS) (SN), 2017 WL 945099, at *6 (S.D.N.Y. Mar. 10, 2017) (holding that constructive knowledge is insufficient to constitute discovery), *with BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 247 F. Supp. 3d 377, 393 (S.D.N.Y. 2017) (finding that a trustee has a responsibility to "pick up the scent and nose to the source" when it "learn[s] of facts merely suggestive of a breach" (internal quotation marks omitted)), *and The Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, No. 11-CIV-505 (CM), 2013 WL 3146824, at *19 (S.D.N.Y. 2013) (finding that discovery occurs when a party "knows or *should know* that the breach has occurred" (internal quotation marks omitted)), *aff'd* 821 F.3d 297 (2d Cir. 2016).  For better or for worse, however, this Court need not wade into that thicket here, as Plaintiffs' claims fail as a matter of law for another, more fundamental reason: They cannot show that they were harmed by Citibank because, by the time Citibank allegedly learned about the breaches at issue in 2009 (*see, e.g.*, Docket No. 1 ("Compl."), at ¶¶ 223, 255, 304), it was precluded from taking any meaningful action as trustee by virtue of the fact that AHM Acceptance and AHM Servicing had filed for bankruptcy.

Specifically, because of the automatic bankruptcy stay, Citibank was precluded from taking any actions outside of the bankruptcy to recover against the bankrupt entities.  *See* 11 U.S.C. § 362(a).  Additionally, within the bankruptcy, Citibank was precluded from bringing any new claims after the January 11, 2008 bar date had passed.  *See* Fed. R. Bankr. Proc. 3003(c)(2);

*see also, e.g.*, *In re U.S. Wireless Data, Inc.*, 547 F.3d 484, 492 (2d Cir. 2008) (affirming a bankruptcy court order expunging an untimely claim, noting that the "Federal Rules of Bankruptcy Procedure permit bankruptcy courts to establish bar dates by which proofs of claim must be filed or thereafter forfeited"). And finally, because the governing agreements were "executory contracts" under the Bankruptcy Code, *see* 11 U.S.C. § 365, Citibank was not allowed to exercise many of the contractual remedies that might otherwise have been available to it outside of a bankruptcy proceeding — including, for example, terminating the rights of the servicer — without approval of the Bankruptcy Court, *see* 11 U.S.C. § 362(a); *In re Am. Home Mortg., Inc.*, 379 B.R. 503, 523 (Bankr. D. Del. 2008).

In short, Citibank could not have pursued any enforcement measures when it allegedly discovered breaches in or after 2009 that would have avoided the losses that Plaintiffs claim to have suffered. It follows that Plaintiffs cannot establish breach, causation, or damages — all necessary elements for their claims. *See, e.g.*, *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (discussing the elements of breach of contract); *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (Cabranes, J.) (same). Nor can Plaintiffs remedy that defect by amending their Complaint to allege that Citibank acquired relevant knowledge before AHM Acceptance and AHM Servicing filed for bankruptcy in 2007. For one thing, Plaintiffs are bound by their existing pleading. *See, e.g.*, *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (affirming an underlying decision that a district court did not abuse its discretion when it failed to consider an argument first raised at summary judgment); *Slade v. Alfred Univ.*, No. 11-CV-396 (RJA), 2013 WL 6081710, at *3 (W.D.N.Y. Nov. 19, 2013) (noting "a litigant cannot defeat summary judgment by raising a new theory, based upon facts not alleged in the complaint, in response to a summary judgment motion"); *see also Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147,

167 (2d Cir. 2003); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding."). For another, there is no dispute that Plaintiffs' claims would be time barred if Citibank acquired knowledge of the alleged breaches before November 24, 2008, or six years before they filed their Complaint (which is undoubtedly why Plaintiffs date Citibank's knowledge to 2009). (*See* Compl. ¶ 222; *see also* Defs.' Mem. 1).

The Court encountered nearly identical circumstances in *BlackRock Balanced Capital Portfolio (FI) v. Deutsche Bank National Trust Co.*, 14-CV-9367 (JMF) ("*BlackRock*"), another residential mortgage-backed securities case involving claims against indenture trustees. The defendant trustees in that case moved to dismiss the plaintiffs' claims as to twenty-one of the trusts at issue on the ground that the third parties against whom the trustees might have pursued enforcement actions had filed for bankruptcy two years before the trustees allegedly first learned of the breaches. (14-CV-9367, Docket No. 169, at 10-13). At oral argument, the plaintiffs' counsel (who also represents Plaintiffs here) argued that the defendants might have discovered the breaches and taken action prior to the bar date or otherwise taken steps in or after the bankruptcy proceedings to prevent harm to the plaintiffs. (14-CV-9367, Docket No. 215 ("*Deutsche Bank* Tr."), at 7-8). When pressed, however, he conceded that the complaint did not contain "specific allegations" concerning what the trustees could have and should have done to prevent harm to the plaintiffs' given the bankruptcy proceedings. (*Id.* at 7). He further acknowledged that he did not know "exactly what [the trustees] did" or did not do in the bankruptcy or how that might have caused damages to the plaintiffs. (*Id.* at 10-11).

Ruling from the bench, the Court dismissed the *BlackRock* plaintiffs' claims as to the "failed warrantor trusts" for failure to state a claim. Invoking *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 680 (2009), the Court noted that the

10

plaintiffs had to "'nudge their claims across the line from conceivable to plausible.'" (*Deutsche Bank* Tr. 15 (quoting *Twombly*, 550 U.S. at 570)). The Court explained that, in its view, they had not "done so with respect to these 21 failed trusts." (*Id.*). "At most," the Court continued, "they have alleged and established that there is a theoretical possibility that they could recover notwithstanding the lapsed bar dates with respect to those trusts. . . . *Twombly* and *Iqbal* make clear that the theoretical possibility is not enough . . . ." (*Id.* at 15 (citing *Twombly*, 550 U.S. at 570, and *Iqbal*, 556 U.S. 680). Based on the plaintiff's counsel's proffer that he could remedy the defect, the Court did grant the plaintiffs leave to amend their complaint as to the "failed trusts," but noted that it was "skeptical" that the plaintiffs could do so "without . . . running . . . into another set of problems" — namely, the statute of limitations. (*Id.* at 18). The plaintiffs elected not to amend. (14-CV-9367, Docket No. 216).

Notably, the relevant language in Plaintiffs' Complaint here is nearly identical to the relevant language in *BlackRock*, which this Court found insufficient as a matter of law. That alone arguably compels the same result. *See, e.g.*, *Risco v. McHugh*, 868 F. Supp. 2d 75, 106 n.45 (S.D.N.Y. 2012) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." (internal quotation marks omitted)); *see also, e.g.*, *Fobbs v. City of New York*, No. 15-CV-6736 (PKC), 2017 WL 2656207, at *6 (S.D.N.Y. June 19, 2017) (granting summary judgment and dismissing the plaintiff's claim because he "failed to come forward with evidence that would preclude summary judgment . . . and in any event, the complaint itself fails to state a plausible claim for relief as it is entirely devoid of any factual support"); *Siani v. State Univ. of N.Y. at Farmingdale*, 7 F. Supp. 3d 304, 315 (E.D.N.Y. 2014) ("[I]t is worthwhile at the outset to apply the standard of Rule 12(b)(6) to [certain] causes of action . . . before engaging in more fact-intensive summary judgment review."); *McMahon v. Fura*, No. 10-CV-1063 (GHL), 2011 WL 6739517, at *5 (N.D.N.Y. Dec. 23, 2011) ("To the

11

extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."). But even if the Court were to look past the deficiencies in Plaintiffs' Complaint to the record, their claims would still fall short because they fail to support any non-speculative ground upon which they could recover from Citibank.

Granted, that is not for lack of trying. Recognizing the fate of the plaintiffs' analogous claims in *BlackRock*, Plaintiffs here insist that they have "identified the precise actions Citibank could have and should have taken, and supported it with substantial evidence." (Pls..' Mem. 32). But few of Plaintiffs' allegations are in fact "precise," and even fewer are actually pleaded in their Complaint. More fundamentally, Plaintiffs' arguments do not survive close scrutiny. For instance, Plaintiffs first contend that Citibank could have and should have taken various steps to investigate and pursue claims by the bar date in the AHM bankruptcy or before the bankruptcy altogether. They contend, for example, that Citibank filed proofs of claim in the bankruptcy proceedings only as to 234 loans despite the fact that (1) "at the time, at least 7,460 Trust loans were missing title policies and were therefore eligible for repurchase" and (2) that "an adequate investigation" would have revealed that "the Trust's loan pool contained an extremely high percentage of loans with material R&W breaches that adversely affected the noteholder's rights." (Pls..' Mem.31-32).[1] Similarly, they assert that Citibank might have been able to bring claims against Deutsche Bank, as "Custodian," for failing "to take possession of the loan files and providing notice of loan file defects to enforce AHM's obligation to repurchase defective loan

---

[1] Plaintiffs' assertion that Citibank limited its proofs of claim to breaches "in only 234 loans" finds no support in the portions of their Rule 56.1 Statement that they cite. (*See* Pls.' Mem. 3, 32 (citing Docket No. 140 ("Pls.' Counterstatement"), at ¶¶ 101, 104)). For present purposes, the Court assumes the truth of Plaintiffs' assertion.

12

files." (*Id.* 34). But these arguments all suffer from a fatal flaw (separate and apart from the fact that they are unpleaded in the Complaint): They are predicated on actions that Citibank allegedly could have or should have taken *before* 2009 and, thus, are time barred.

Plaintiffs are on slightly firmer ground in contending, next, that Citibank breached its duties as trustee by agreeing to settle the claims that it did file in the bankruptcy proceedings on the cheap — if only because those contentions relate to Citibank's actions within the limitations period. (Pls..' Mem. 3-4, 33-35). But those claims fail for a different reason: Plaintiffs do not proffer any non-speculative evidence that Citibank could have obtained more than it did in the bankruptcy proceedings. Notably, to prove that Citibank could have obtained a more favorable result is no easy task, as the amounts for which Citibank settled its claims were based on the liquidation plan approved by the Bankruptcy Court, and the Bankruptcy Court blessed the stipulation of settlement itself, explicitly finding that "the relief requested" was "in the best interests of the Debtors' estates, their creditors and other parties in interest." (Russell Decl., Ex. 32-6 (*In re AHM*, Docket No. 8653), at 1). Indeed, to approve a settlement, the Bankruptcy Court was required to find that it was "'fair and equitable.'" *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *see In re Texaco Inc.*, 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988) (stating that approval depends in part on "the likelihood of . . . success" on the claim). In the face of that history, it certainly does not suffice to assert in conclusory fashion, as Plaintiffs largely do, that Citibank should not have agreed to settle its claims for as little as it did. Instead, they would need to proffer concrete evidence from which a reasonable jury could conclude, on a non-speculative basis, that Citibank

could have and should have obtained more than it did — or, more to the point, that a "prudent person" would have taken steps to obtain more *and* would likely have succeeded.[2]

Plaintiffs fail to carry that burden. Indeed, the only "evidence" they offer to prove that Citibank could have done better for them is their insistence that Citibank "took great efforts to investigate and pursue its own claims in the AHM bankruptcy." (Pls..' Mem. 3-4). In particular, they allege that Citibank "pursued unsecured [Early Payment Default ("EPD")]/breach claims on behalf of Citigroup Global Markets Inc. . . . , ultimately obtaining over $14.6 million, or 20% of the originally requested $68.8 million." (*Id.* at 33; *see also id.* (noting that "[s]everal other unsecured creditors . . . similarly obtained substantial allowed EPD/breach claims")). To compare those claims to the claims at issue here, however, is to compare apples and oranges. (It is also to confuse Citibank with Citigroup Global Markets Realty Corp. ("CGMRC"), a distinct entity.) The relevant agreements here do not provide a remedy for EPDs — they provide a remedy only when breaches of representations and warranties are "discover[ed]." (*See* SA § 2.03). By contrast, under its agreement with CGMRC, AHM was contractually obligated to repurchase all EPD loans, without the need for CGMRC to prove a breach. (*See* Docket No. 154, Ex. 5.2, at § 7.05 ("In the event that any Mortgagor fails to make the first, second or third scheduled Monthly Payment due on a Mortgage Loan . . . within the calendar month such payment is due, Seller shall repurchase such Mortgage Loan . . . within five (5) Business Days following . . . .")). Thus, the mere fact that CGMRC and similarly situated creditors obtained a better return on their EPD claims does not provide a basis to conclude that Citibank could have obtained a better result on the claims at issue here.

---

[2] Needless to say, if Plaintiffs could proceed on a theory that Citibank breached its duties with respect to its handling of the claims that it filed prior to the bar date, their damages would be limited to the loans underlying those claims.

14

Third, Plaintiffs contend that Citibank could have and should have pursued relief against various "solvent third parties." (Pls..' Mem. 34; *see* Compl. ¶ 324). Relatedly, they assert that Citibank "failed to provide notice" to noteholders so that they could "take action to protect their rights and avoid or mitigate losses due to the defective loans." (Pls.' Mem. 34; *see also id.* 28-29). "Proper notice," they insist, "would have enabled noteholders to, among other things, determine whether to take independent or collective action to protect their interests against such [representation-and-warranty] breaches, including against solvent responsible parties such as [Deutsche Bank]. Moreover, had Citi[bank] timely disclosed all known defaults, investors would have had valid claims under the securities laws against the Trust's underwriters — Citigroup; Lehman Brothers; Bear Stearns & Co., Inc.; and UBS Investment Bank . . . ." (*Id.* at 34). But Citibank *did* provide notice to noteholders that it had filed proofs of claim in the bankruptcy proceedings, and invited them to "instruct[] and direct[]" Citibank to take action — an invitation that went unaccepted. (*See* Defs.' Mem. 11; Russell Decl. Ex. 26, at 2). Additionally, these theories of recovery are not pleaded in the Complaint — except in the broadest of terms (Compl. ¶ 324), which fall far short of stating a plausible claim for relief. And in any event, Plaintiffs must ultimately do more than merely state that Citibank or the noteholders could have theoretically pursued claims against other solvent parties. They would have to show, through non-speculative evidence, that a "prudent person" in Citibank's position would have pursued such claims *and* that they likely would have recovered more than Citibank did. Plaintiffs fail to do so.

Finally, Plaintiffs argue for the first time that Citibank "failed to act prudently with respect to pursuing the Trust's claims against AHM because of its numerous conflicting roles in the transaction." (Pls.' Mem. 36). For instance, they contend that, "[i]n connection with the Trust, Citi was both an underwriter and the trustee" and "had an economic incentive to refrain

15

from aggressively prosecuting the Trust's Seller [representation-and-warranty] claims because doing so would have potentially exposed Citi to liability . . . for making false statements in connection with the offering." (*Id.* at 36-37). Once again, however, Plaintiffs are conflating under the name "Citi" two distinct entities: the indenture trustee, the only Defendant in this case, and the securities underwriter, non-party Citigroup Global Markets, Inc. ("CGMI"). (*See* Pls.' Counterstatement ¶ 122). More fundamentally, Plaintiffs do not provide any concrete evidence that the Trustee's actions were influenced in any way by a conflict of interest. That is, conclusory assertions aside, Plaintiffs fail to prove that, by virtue of any conflict of interest, Citibank caused them concrete harm.

## CONCLUSION

In sum, for the reasons stated above, Plaintiffs are stuck between a rock and hard place. By pleading that Citibank did not learn of the alleged breaches until 2009, they avoid a statute-of-limitations problem. In doing so, however, they run headlong into a bankruptcy problem. By contrast, fixing the bankruptcy problem by alleging knowledge before 2007 would run them headlong into the statute-of-limitations problem. The result is that Plaintiffs' claims against Citibank fail as a matter of law and must be dismissed. Accordingly, Citibank's motion for summary judgment is granted. It follows that Plaintiffs' motions for summary judgment and class certification are denied as moot. The Clerk of Court is directed to terminate Docket Nos. 109, 135, 139, and 157; to enter judgment in favor of Citibank; and to close the case.

SO ORDERED.

Dated: March 22, 2018
      New York, New York

                                         JESSE M. FURMAN
                                         United States District Judge